PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK L. WEAVER<br>(#641-925), | )<br>)<br>) | CASE NO. 4:14CV2399 |
| Plaintiff, | )<br>) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | )<br>) | |
| SHERIFF ALTIERE, *et al.*, | )<br>) | **MEMORANDUM OF OPINION**<br>**AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 3] |

*Pro Se* Plaintiff Patrick L. Weaver, currently an inmate at the Mansfield Correctional Institution serving a 12-year sentence,[1] filed this civil rights action pursuant to 42 U.S.C. § 1983 against Trumbull County, Ohio Sheriff Altiere and five Trumbull County Corrections Officers: Officers Mattson, Festenmaker, Mekker, Ackenrod, and Nicholson. Plaintiff indicates in the caption of the Complaint (ECF No. 1) that he asserts constitutional claims against Defendants for "cruel and unusual punishment" and "unconstitutional use of a stun gun." ECF No. 1 at PageID #: 1.[2] He seeks $50,000 in compensatory damages and $100,000 in punitive damages. ECF No. 1 at PageID #: 5.

---

[1] *See State v. Weaver*, No. 2013-T-0066, 2014 WL 1356231, at *1, ¶ 5 (Ohio App. 11th Dist. March 31, 2014); *State v. Weaver*, No. 2012 CR 00581 (Trumbull Cty. Ct. of Common Pleas filed Aug. 16, 2012).

[2] The Complaint (ECF No. 1) is dated January 1, 2014, but was not received for filing until October 28, 2014.

( 4:14CV2399)

Plaintiff alleges that on November 24, 2012, while he was incarcerated in the Trumbull County Jail's ("the Jail") segregation unit as a pretrial detainee,[3] he asked the corrections officers monitoring the unit to allow him to clean his cell or be moved to a cell that was in a better condition because the cell was "unsanitary," "had feces all over the windows and walls," and a clogged sink and toilet. After the officers monitoring the cell refused, Plaintiff "became angry and felt that the only way to receive any assistance was to flood [his] cell." He proceeded to flood the floor of his cell with two to three inches of water. Water also went all over the day room. Plaintiff alleges this "caused a lot of attention" and that the Defendant Corrections Officers "began to group up in front of [his] cell." He alleges that, without verbal command or warning to him, Officer Festenmaker "rushed into [his] cell with the shield" and ran into him "so hard that the shield bruised [his] hands and knees." Officers Mekker and Ackenrod then followed Officer Festenmaker and "slammed [Plaintiff] to the ground into the water." Officer Mattson tasered him "while in the water [w]ith chances of electrocuting [Plaintiff]." ECF No. 1 at PageID #: 3, § IV.

Furthermore, Plaintiff alleges that after the incident he "asked for supervisory assistance but was refused." He wrote multiple grievances, but wasn't given any attention until December 12, 2012, when x-rays were taken. "[N]o injuries were visible on the x-rays." Assistant Warden

---

[3] Plaintiff did not post bond following his arraignment on September 24, 2012. Plaintiff remained in pretrial detention at the Jail until a jury found him guilty of robbery, grand theft of a motor vehicle, and failure to comply with the order or signal of police officer in the Trumbull County Court of Common Pleas on April 17, 2013. *Weaver v. Moamis*, 4:14CV0311, 2014 WL 4425742, at *2 n. 1 (N.D. Ohio Sept. 8, 2014) (Pearson, J.) (prisoner civil rights case filed by Plaintiff involving a prior incident in the day room at the Jail on October 9, 2012); *Weaver*, 2014 WL 1356231, at *1, ¶ 4.

2

( 4:14CV2399)

Eric Shay and Investigator Dan Lester are alleged to have "failed to investigate [the] guards or the incident." ECF No. 1 at PageID #: 3, § IV.

### I. Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it is frivolous or malicious, fails to state a claim on which relief may be granted or if it seeks monetary relief against a defendant who is immune from such relief.

In order to state a claim on which relief may be granted, a *pro se* complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See* Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard articulated in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), governs dismissals for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)). The factual allegations in the pleading "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555.

### II. Law and Analysis

Upon review, the Court finds the Complaint (ECF No. 1) must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because, even assuming the truth of Plaintiff's allegations, it does not plausibly suggest any viable federal civil rights violation.

3

( 4:14CV2399)

### A. Sheriff Altiere

Plaintiff has failed to state a claim on which relief may be granted against Sheriff Altiere. The Complaint (ECF No. 1) sets forth no allegations of wrongful conduct on the part of the sheriff. Plaintiff appears to premise his action against the sheriff on the basis of his supervisory position. However, "a § 1983 claim may not be based on respondeat superior liability; instead, the 'supervisory official at least [must have] implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011) (quoting *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (brackets in original)). "[A] 'mere failure to act' is not enough; 'the supervisor[] must have actively engaged in unconstitutional behavior'" if he is to be held liable. *Id.* (quoting *Gregory v. City of Lousiville*, 444 F.3d 725, 751 (6th Cir. 2006)); *see also Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (merely claiming that defendants were aware of alleged misconduct, but did not then take appropriate action, is insufficient to impose liability on supervisory personnel under § 1983).

### B. Corrections Officers Mattson, Festenmaker, Mekker, Ackenrod, and Nicholson

Initially, the Court notes the Complaint (ECF No. 1) sets forth no allegations of wrongful conduct by Officer Nicholson against Plaintiff. The only allegation that mentions Officer Nicholson states that he was one of the five corrections officers that "rushed into [Plaintiff's] cell." ECF No. 1 at PageID #: 3, § IV.

4

( 4:14CV2399)

The Complaint (ECF No. 1) alleges a violation of the Eighth and Fourteenth Amendments for excessive force.  ECF No. 1 at PageID #: 1, 4.  As the Court stated in *Weaver v. Moamis*, No. 4:14CV0311, 2016 WL 1260679 (N.D. Ohio March 31, 2016) (Pearson, J.):

> "The Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because[,] when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials." *Lanman v. Hinson*, 529 F.3d 673, 680-81 (6th Cir. 2008).  Under the Fourteenth Amendment, a pretrial detainee is protected from the use of excessive force that amounts to punishment.  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)).  Determining whether the use of force amounts to punishment requires an inquiry into the defendant's state of mind.  *Graham*, 490 U.S. at 398 ("[P]unishment . . . clearly suggest[s] some inquiry into subjective state of mind. . . .").  "An intent to punish a pretrial detainee may be inferred from the use of force in the absence of any penological justification."  *Leary v. Livingston Cty.*, 528 F.3d 438, 451-52 (6th Cir. 2008) (Clay, J., dissenting) (citing *Wolfish*, 441 U.S. at 539).
>
> Under the law in effect at the time of this incident, a Fourteenth Amendment claim is actionable when "the defendant's conduct 'shocks the conscience' so as to amount to an arbitrary exercise of governmental power." *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)).  Whether conduct "shocks the conscience" depends on the circumstances of the case.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851-53 (1998).  When defendants have "a reasonable opportunity to deliberate," their actions shock the conscience "if they were taken with deliberate indifference towards the plaintiff's federally protected rights."  *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 134 (6th Cir. 2014) (internal quotation marks and citations omitted).  When the incident to which defendants are responding is a "rapidly evolving, fluid, and dangerous predicament," the conduct does not shock the conscience unless the evidence shows that defendants "acted 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'"  *Burgess*, 735 F.3d at 473 (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000)).  The malicious or sadistic standard is more difficult for a plaintiff to satisfy.  *See Claybrook*, 199 F.3d at 360 ("Thus, the more exacting malicious or sadistic standard of proof, rather than the comparatively relaxed deliberate indifference evidentiary criterion,

( 4:14CV2399)

>controlled the shocks the conscience substantive due process element." (internal quotation marks omitted)).

*Id.* at *4 (brackets in original). Plaintiff alleges that when he flooded the floor of his cell with two to three inches of water, water also went all over the day room. ECF No. 1 at PageID #: 3, § IV. Therefore, Defendant Corrections Officers were responding to a "rapidly evolving, fluid, and dangerous predicament" created by Plaintiff. *Weaver*, 2016 WL 1260679, at *5 (finding the prior incident in the day room at the Jail on October 9, 2012 involving Plaintiff also was a "rapidly evolving, fluid, and dangerous predicament").

The mere fact that a prisoner was subjected to physical contact which may have been forceful does not itself show a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604-605 (6th Cir. 1986). As noted in *Whitley v. Albers*, 475 U.S. 312 (1986), several factors are relevant in determining whether a particular use of force was objectively reasonable or, instead, was wanton and malicious. *Id.* at 320-21. These factors include the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, any efforts made to temper the severity of the forceful response, and the extent of injury suffered. *Id.* Given the realities of the penological setting, a use of force against a prison inmate may be acceptable if the force is used in a good faith effort for valid penological purposes. *Id.*; *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008); *Parrish*, 800 F.2d at 604. Preventing safety or sanitation hazards is a legitimate penological objective. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975, at *1 (6th Cir. March 26, 1992) (upholding seizure of prisoner's legal property where property size limits were justified by fire, safety, and sanitation hazards). The core judicial inquiry is "whether force was applied in a good faith effort

6

( 4:14CV2399)

to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320-21).

The facts alleged in the case at bar do not rise to the level required to implicate constitutional concerns. Defendant Corrections Officers' conduct does not "shock the conscience" so as to amount to an arbitrary exercise of governmental power. *See, e.g.*, *Davis v. Hite*, No. 15-CV-10161, 2015 WL 5590725, at *6 (E.D.Mich. Sept. 22, 2015) (finding plaintiffs had not established a constitutional violation when the officers were responding to a rapidly evolving confrontation where multiple individuals, including the plaintiffs, posed an immediate threat to the safety of the officers). The conduct of Plaintiff—flooding the floor of his cell and causing water to be all over the day room—created legitimate safety and sanitation concerns. No intent to harm, malicious or sadistic, can be inferred from the alleged conduct of Defendant Corrections Officers. They acted "in a good faith effort to maintain or restore discipline" by entering Plaintiff's cell to abate the safety and sanitation hazards posed to Plaintiff, the other prison inmates, and staff at the Jail. Moreover, Plaintiff alleges that "no injuries were visible on the x-rays" that were taken less than three weeks after the incident. ECF No. 1 at PageID #: 3, § IV. Finally, Plaintiff does not allege he exhibited any symptoms of being affected by the taser after the incident.

What was stated in *Nelson v. Melton*, No. 2:12-0120, 2013 WL 6255381 (M.D.Tenn. Dec. 4, 2013), *report and recommendation approved*, No. 2:12-cv-0120, 2014 WL 576188 (M.D.Tenn. Feb. 11, 2014), is equally true of the case at bar:

> There is nothing in the Constitution that requires correctional officers to use the least intrusive steps possible in their efforts to restore discipline and order, nor

7

(4:14CV2399)

> does a prison inmate have to be a significant threat to either prison staff or other inmates before some measure of physical force can be used against him in order to accomplish a legitimate penological objective. *See Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). The fact that the plaintiff subjectively believed [that] he was not a security threat and that the Defendants' actions were excessive is of no constitutional relevance. Even when everything the plaintiff alleges is taken as true, he fails to show a constitutional claim because the Defendants' actions were justified and reasonable based on the record before the Court.

*Id.* at *8.

### III. Conclusion

Based on the foregoing, this action is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Plaintiff's Motion for Conference of the Parties, Planning for Discovery (ECF No. 3) is denied as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

| | |
|---|---|
| April 22, 2016 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

8